Thank you your honors and may it please the court Edmund LaCour here on behalf of appellant Michael Thompson. In a he said she said case the defendants credibility is paramount. That was the case in this instance where Thompson's credibility was his best if not only defense to the crucial charge of CSC one criminal sexual conduct in the first degree. The opening statements from both the state and from Mr. Thompson's counsel Richard Stevens bore this out. The state said you're going to hear from AB the accuser she is going to tell you quote what really happened because in turn Thompson's counsel stood up and also started to build up the credibility of his client. He said my client will come up here and he is going to quote take the stand he is going to quote subject himself to cross-examination and he is going to quote adamantly deny that he committed CSC one in the first degree. Now the state what about the fact that I mean I know there's references that refer to prosecutors and quote cross-examination but I mean the video you know you are hearing from him right I mean it's it's long and it has components of things that look like cross-examination of course these are lay jurors. How inaccurate was it really I guess is part of my question. Your honor I think he made very clear in the statement that I mean he used the words he will take the stand. That's illegal to stand I mean you're a juror you're like I thought he said something about we were going to hear him well I think and then you can imagine the other jurors saying what we did they had that long video. He also said he also said your honor that the prosecutor will subject him to multiple questions that's in the record as well so I don't think there was any doubt in the jurors mind what had been promised to them nor was there any doubt that that promise had been broken at the close of trial and moreover they saw AB take the stand and AB's story could have been put on through Dr. Goosehurst the physician who investigated her four days after the event that happened and who was able to tell the jury here's what she told me. AB could have sat back and not had to give some very difficult testimony but she did she braved the witness stand as a 12 year old girl and then you have Mr. Thompson who was there watching all this who appears to be hiding behind this video so I think this video if anything heightens the prejudice calls the jury's attention once again to the fact that Mr. Thompson did not testify as promised and therefore the state court's decision that he was not prejudiced by this broken promise is an unreasonable application of Strickland because after all you know. State care was the promise not actually not putting him on the stand right you're not saying the problem was he should have put him on the stand. No your honor I think the way to think about this is that the at the moment of promise is when we see deficiency because by Stevens's own testimony at the state IAC hearings he said he needed to keep his options open that was his strategy he had two options put him on the stand or not put him on the stand and he didn't know which one he was going to choose until after the state had finished putting on its evidence. So then stand up at opening and irredeemably poison one of those two to know whether that would be prejudicial until we got to later in the trial maybe things worked out in a different way and Thompson is acquitted on CSC one and there's no prejudice there but it doesn't make his decision at the outset any more reasonable to make essentially what is a no-win gamble with his clients credibility and it's one in the district court on that issue we did your honor yes the judge judge Lawson yes he agreed with us on that and he also cited precedent from this court in English v. Romanowski case which we think is basically materially indistinguishable if anything it's this case the Thompson case is even more egregious than what English's counsel did in English v. Romanowski but we also have I mean the district court cited from the First Circuit in Weber and Anderson and from the Seventh Circuit in Hampton cases where you have lawyers who for no rational reason promising that their client or that some other evidence is going to be put on and then later in the trial not putting it on and again without any sort of unexpected event occurring during the trial to justify that change in strategy and without any sort of explanation to the jury as to why they changed that strategy I mean I think it's almost a misnomer to call what mr. Stevens did strategy because again he knew he needed to wait to choose one of those two no reasonable attorney meeting the constitutional minimum for reasonable assistance would take an action along those lines case on prejudice you know an edpa case on prejudice so it has to be Weber from the First Circuit your honor did that have a video where there actually was the jury actually still did hear from the defendant that did not have a video your honor not aware of any cases where there was a video necessarily but go ahead and describe why the First Circuit case is really useful well and we were I mean there were still the court still mentioned that through crime and through cross examination of the other person and he said she said case so Weaver was an instance where the defendant had handed over an envelope that should have been for allegedly was for drug money and she said she didn't know is for drug money the confidential informant was the other side of he said she said case saying he knew but at their cross-examination they were able to sort of draw out this notion that maybe he didn't maybe we were did not know so there was still somewhat of a narrative put in place but I think what's what's crucial here is not simply that a counter narrative was presented to the jury what's crucial is that Stevens gave the jury every reason to disbelieve that narrative so I mean in English while it's not edpa as to as to prejudice I mean the court recognized there that even though English himself was still able to get up take the stand and present his story directly to the jury he was still prejudiced because his lawyer promised that his girlfriend as compromised of a witness as she was was still going to also take the stand and corroborate his story and when she failed to appear this court held that the negative inference would have formed in the jurors minds and that inference would have attached to English and it would have attached to his testimony and therefore he was clearly prejudiced in this instance and the other key point that this court focused on in that opinion was that there was not an instance of overwhelming evidence I think that maps on directly to this case here as well no physical evidence here all we have is the testimony of a be as we point out in the briefs the testimony is somewhat equivocal if not contradictory at points at one point she says she's not sure exactly how she was touched at another time she suggests that maybe she was touched in an area where there would not be penetration even possible which is the crucial element for CSC one so this is this is not an instance of overwhelming evidence the district court recognized as much when it in its opinion below so what this really did boil down to was as the court said in English a quote swearing match between Thompson English was not an epic case English wasn't epic case but the state court sir it was your honor but the issue there was that the state court found that there was no deficient performance and therefore did not ever rule on the prejudice factor so when the court considered the state here there was a clear reliance on the on the prejudice there was your honor so so there would be at this double-decker it bothers me about this case because it's I think you make some strong points I just don't know what we do with at the difference are we really gonna say that the state court when it decided there was no project decided that if there was a performance problem there was no prejudice that we got to say that that was an unreasonable determination was it unreasonable these are unreasonable lawyers making this determination we think in this instance that it was unreasonable I mean even reasonable lawyers can make unreasonable conclusions at times and why is it unreasonable I mean they're relying on some reasonable things like the fact that they saw the tape well they say they saw the tape they saw it he shouldn't have gotten in this position but they saw the tape and they got they knew what the argument was and they knew what he probably would say and I mean it may be wrong but how is that unreasonable that's my concern candidly yes your honor but again to go back to the point I was making before to judge Sutton the the problem here was not that a counter narrative was not presented it's that he gave the jury every reason to disbelieve it we have again at a 12 year old girl who is able to muster up the courage to take the stand face her accuser face the jury then we have a grown man who is hiding behind this video and so at the end of the day the jury is left to wonder why couldn't he face us why could he not face a be must be because he's not credible because he can't tell his story credibly because that's very reasonable but when the state judge gets here and said I mean conceptually speaking and says these are the reasons that I say there was no prejudice you have to say that's unreasonable you can't say your argument is reasonable right well I know we've that it's unreasonable to focus on the fact that his story was told because that's not the crucial fact the crucial fact is that in a battle of credibility his credibility was completely undermined by his own counsel it's not the fact that he didn't get to tell the jury what happened it's that they had no reason to believe him because precisely what his lawyer did and if you have again some somewhat equivocal testimony this is not an instance of overwhelming evidence this is a bare minimum the court even the district court below in considering a sufficiency of the evidence challenge even said this is not overwhelming but under EDPA's deferential standard we're going to find that it is sufficient evidence but here I mean going to prejudice it less needs to be shown as to that I mean we have again equivocal testimony only the two of them knew what exactly happened that day and the fact the crucial fact is not whether the jury heard what Thompson says happened it's whether they had any reason to believe him and we've submit they have no reason to believe him when it appears after his lawyer has built built this up have to explain what he would have said if he testified I mean the thing I'm struggling with I get the promise point I get it but I'm just looking at this case and thinking he had no choice he was never gonna put his client on the stand it was just an unwinnable situation in that respect all he could ever do is rely on the video because if you put the client on the stand he's always gonna be stuck with the video so if he varies from the video he's gonna have a lack of credibility problem plus lots of cross-examination questions which arguably make things worse so what I see this is a case where he made a mistake and saying that at trial I mean in opening but he I just don't really see how he had choices in terms of putting his client on in fact I think that would have been the ineffective assistance oh I and I'm when you've already got the video which you know you just you can't win you say the same thing as the video you've just doubled down on what's pretty bad you try to vary from it now you're subject to cross-examination up on the floor just I'll answer this question then reserve the rest of my time for reply but you know all he would need to do is say you will hear from my client on the video or simply say nothing at all there's no reason it makes it so different from these other cases the video was always gonna be in front of them the question was gonna be whether there was elaboration I grant the promise thing I get it I'm trying to figure out prejudice though and I'm just trying to figure out the different ways this case plays out and it's really hard to see too many differences how it plays out and to you it's just prejudicial because we got this promise of live versus video testimony and the word live wasn't even used on stand subject practice cross-examination prosecutor will ask him multiple questions that was all used so I know he will testify so I think live was was clearly conceived of or clearly communicated to the jury but as to that your point again that how do you simply stayed silent he would not have built up these expectations like English recognized like this court recognized in English he would not have formed this pact with the jury and so the jury would have been you would have just had basic the credibility would have been where it was had he not said anything whatsoever and then they could have judged from the video and I think any fair mind jurist would conclude that there's at least a reasonable probability one juror might have come out a different way had they can see had they heard Thompson's testimony on the video without having to also expect to live and explaining explain himself away instead it looked like he couldn't explain away the video made the video look even worse and prejudiced him but I'll reserve the rest of my time thank you morning your honors may it please the court assisting Attorney General Scott on behalf of the respondent warden this court can easily affirm the district court's denial of the petition for rig of habeas corpus due to lack of prejudice a reasonable jurist could find that there was no prejudice in this case for three reasons first the jury was instructed that they must not draw an adverse inference from mr. Thompson electing not to testify for exercising his right not to testify second the jury heard and saw Thompson's account of the events through his police interview tape approximately a 40 to 45 minute interview and finally the evidence in this case was strong mr. Thompson admitted that he took nude pictures of and groped a 12 year old girl the leap to penetration based on the victim's testimony was truly not that strong as the lesser charges it seems hard to say these cases are all tough it is a he hard to define exactly what you're talking about I mean and all of that is certainly true in this case though as with any other first-degree criminal sexual conduct case in Michigan the law is and the jury was instructing in this case that penetration is any intrusion into a genital opening quote however slight and the jurors are also instructed that the victim's testimony alone is enough to sustain any conviction so the jurors know that the the quantum of evidence here still needs to be beyond a reasonable doubt for certain but is the intrusion has to be however slight and there was evidence in this record that there was a intrusion however slight to constitute the penetration necessary for first-degree criminal sexual conduct the victim testified that at one point the defendants hand or fingers may have gone she said between where she goes to the bathroom the jury could infer that to be the penetration issue and along with the strength of the evidence here we also have the jury instructions and the interview tapas you discussed with appellants counsel and the jury instructions they receive both preliminary and final instructions their preliminary instructions including that the opening statements are not evidence that the defending is not required to produce any evidence and that the defending is subject to the presumption of innocence and further they receive final instructions again that this attorney's statements including openings and closings are not evidence they were again told about the presumption of innocence and that the defendant was not required to testify or present any evidence in fact the jury was told quote every defendant has the absolute right not to testify when you decide this case you must not consider the fact that he did not testify it must not affect your verdict in any way that appears on page ID 391 so I take you concede the judge Lawson was probably right on that first in the first round that it was ineffective assistance no judge Sutton we would not concede the deficient performance prong of the ineffective assistance issue what justifies what he did I think here it's really two reasons first that there is value in making a more concrete definitive statement in your opening statement of what you honestly believe at that point what the evidence will be including in this case if counsel honestly believed that his client would testify and tell the jury about his account of the events with or without the video there's some value in being definitive they are not waffling not skirting around the issue not saying you'll hear from him and then they find out later well he was being a little facetious because we heard from him through the video and not through his testimony there's value in exuding confidence through that definitive statement from being transparent and honest with the jury and further there are always going to be the possibility of changed circumstances but that possibility of changed circumstances should not preclude the attorney in his statement from giving that definitive account of what he honestly believes in that moment the evidence will show certainly things could happen down the road throughout the trial the trial could extend longer than the attorney believed perhaps other witnesses says where the lawyer was unsure whether he was going to put his client on the stand at opening so not sure as is true here still promises he's going to put it on and a court said that's fine that's effective assistance that's not an effective there a court is there a case that says that there's not necessarily a clearly established federal Supreme Court case on that on that issue or not to my knowledge that there is a even a circuit court case that says that obviously counsel has cited circuit court cases that go the other way but the clearly established Supreme Court precedent that we're dealing with here is Strickland which is a very broad case and it's meant to encompass many different issues including this one because we don't have a more specific case on point and we know from other Supreme Court precedent that because that strip because Strickland is broad the state courts get not more deference per se than AGPA will allow but they get significant leeway in deference in make coming to their decisions because they applying a broad standard the counsel's making the promise even where he was undecided is I think somewhat worsened don't you think by the fact that he didn't he never fully viewed the tape we call it the tape but the video sure sure I mean it was he taken by surprise I mean did he testify that to that there wasn't evidentiary hearing in this case based on this claim so counsel did testify he was the only witness who testified at this hearing and he testified that he believed that he had watched the video twice before this before he gave his opening statement and he also mentioned that he had been furnished with a written transcript of the tape and he had reviewed that that appears on page IDs 413 and 414 so he was aware of what the video showed he was aware of specifically what his client saying in that video and he believed he says no fewer than three times during that evidentiary hearing that he honestly believed his client was ready and was going to testify in that case but there were changed circumstances here he said that once the to it and his own clients reaction to it and believed that because of those reactions it was better to not put his client on the stand and to rest on the video because I believe as counsel said and as you can see I believe the video has been made part of this record for your honors to review the defending in that video comes off as calm collected remorseful I don't believe and specifically counsel stated at that evidentiary hearing that he did not believe that his client could have testified any better than that especially when you would have been subject to cross-examination and judge Sutton as you had pointed out he more or less was subjected cross-examination to some extent the police officer challenged him with some statements some evidence and sort of forced Thompson to answer to those things now it wasn't precisely what a cross-examination from the prosecutor would have been but there was to some extent some challenging of his statements and going back to the jury instructions as well not only did they receive this instructions but of course this court in any court in a criminal case would have to assume that the jurors followed those instructions that they were told not to draw this adverse inference and we must under weeks versus Angelini for 528 us 225 that case in many others that jurors are presumed to follow those instructions if the jurors were told that they cannot despite anything that counsel said in his statement which was not evidence that they can't draw an adverse inference here then we must assume that they did not draw that adverse inference and that they that counsel's promise in his opening really was of of no moment because the judge says don't believe what the attorneys tell you about the law is this is the law consider all my instructions as a whole if they say anything contrary to what I say believe me and what I'm telling you is you cannot draw an adverse inference from the count from the defendant electing not to testify for exercising his constitutional right not to testify unless your honors have any other questions again this court can easily affirm this case based on no prejudice because of the jury instructions the evidence here and the fact that they did hear from the defendant through his interview tape thank you thank you your honors just a few points one as to the jury instruction of course jury instruction similar wrote jury instructions were given in English Weber Hampton the other case we cite in our briefs that was not enough to cure prejudice in those instances and one point I'd like to make about the jury instruction specifically one thing the jurors were told is how did the witness to consider is how did the witness look and act while testifying before you here in court did the witness seem to be making an honest effort to tell the truth or did the witness seem to be evading the questions or arguing with the attorneys so not just did the witness look good on the video but was he arguing with the attorneys which would again brought the jurors mind back to the fact that he did not appear in court because he had something to hide presumably you agree that it's not this fact pattern is not this case but I think you agree there can be situations where a lawyer really does want to put someone on really thinks it's a good idea and changes his mind based on changed circumstances and that's not ineffective in fact it might even be ineffective to stick with your original promise that's correct your honor you agree with that yes each of these cases they say if there are unexpected events that occur between the opening promise and decision doesn't that dilute a little bit the forcefulness of how prejudicial it is to promise and then not deliver on promise it just shows it's not a clean-cut point I think it still comes back around to I mean if you fail to adjust you're going to prejudice your your client just the same so but in this instance I mean the prejudice was essentially baked in when he made that deficient comment at the outset and then the prejudice later came to light when he found himself between a rock and a hard place and and that's the problem there's no reason for him to be there he knew he was going to have to take a left or he's gonna have to take a right at the close of state's evidence and in his opening he built a barricade in front of the one of the turns and then he had to plow straight into it because the right was later foreclosed by the state's evidence that's plainly deficient and completely irrational and in this instance I still think it's prejudicial I'm not sure it's completely irrational I mean if you are if you think you're going to go right and you think going right your opposing counsel says it's going to be much easier if you preface it by saying we're going to go right so the whole right option if you are to continue with the metaphor works better if he promises in the beginning although it makes the left option worse well and then he's option later I don't see how that's irrational. To use a different analogy and we've used the analogy of a no-win bet so I think the state has presumed that like there might be a slight upside if you make a firm and robust promise at the outset any benefit is going to be slight in comparison to the just devastating prejudice you're going to do to your client so if it's not a no-win bet it's a sucker bet but I mean to conclude to conclude I mean they knew I mean to include I mean the council even makes an inadvertent but sort of shocking admission on page 44 of their briefs when they call this a Hobson's choice they say that Stevens and Thompson found themselves in this no-win situation well how did they get there because of Stevens why the very fact that it is a lose-lose choice suggests that there's prejudice as well baked into this there was no need for them to be there this court recognized in English that little can be more damaging than making a promise and failing to deliver it's precisely what happened here therefore we submit that the court should reverse the district court below in order that they grant his Mr. Thompson's petition for rid of habeas corpus thank you thank you counsel and we appreciate your advocacy under the Criminal Justice Act which is a service to the law thank you your honor case will be submitted